**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHAMORA IVERY, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 17 C 1619 |
| RMH FRANCHISE CORP., RMH ILLINOIS, LLC, and RMH FRANCHISE HOLDINGS, INC., | ) ) ) ) | Judge John J. Tharp, Jr. |
| Defendants. | ) ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

This is an action for unpaid overtime wages. Plaintiff Chamora Ivery contends that Defendant RMH Franchise Holdings, Inc. ("RMH Holdings") and its subsidiaries, RMH Franchise Corp. ("RMH Franchise") and RMH Illinois, LLC ("RMH Illinois")—owners of franchised Applebee's Neighborhood Grill & Bar ("Applebee's") restaurants—improperly classified her and other assistant managers ("AMs") as exempt from overtime under the Fair Labor Standards Act ("FLSA") and Illinois wage laws. Before the Court are two motions. The first is Ivery's motion for conditional certification of a FLSA collective action and for authorization to issue step-one notice. Ivery contends that she is similarly situated to other AMs who worked for the defendants and asks the Court to notify those AMs about their right to opt in as plaintiffs in this litigation. The second is the defendants' partial motion to dismiss. The defendants argue that Ivery does not properly allege that RMH Franchise was her employer and thus is not a proper defendant, and that Ivery fails to plead a necessary element of one her Illinois wage claims. For the reasons stated below, the motion to dismiss is granted and the motion for conditional certification is granted in part and denied in part.

## I.  Background

The following allegations are taken from Ivery's amended complaint. The defendants operate an Applebee's franchise with over 175 restaurants throughout the United States. (Am. Compl. ¶¶ 1-2, ECF No. 65.) RMH Holdings is the parent company of the franchise, while RMH Franchise and RMH Illinois are its subsidiaries. (*Id.* ¶¶ 34, 41, 48.) The defendants operate a single website to advertise their restaurants. (*Id.* ¶¶ 3, 26.) They share office space, a human resource staff, payroll functions, training materials, and an onboarding system to manage their employees. (*Id.* ¶¶ 23, 26.) The defendants also maintain joint control and oversight over human resources, compensation, timekeeping, and other employment policies and practices, and apply the same employment policies and procedures to AMs at all of their restaurants. (*Id.* ¶¶ 37-38, 44-45, 51-52.) Moreover, the defendants use the same job postings and descriptions to advertise open AM positions and allow their employees to transfer seamlessly across locations. (*Id.* ¶¶ 24-25.)

Ivery worked as an AM at an Applebee's location in Chicago, Illinois between early 2013 and June 2014. (*Id.* ¶ 15.) According to the amended complaint, Ivery was employed by "RMH"—which the complaint defines as all three defendants—during that period. (*Id.* ¶¶ 1, 15.) Ivery worked an average of 50 to 60 hours per week as an AM. (*Id.* ¶ 17.) However, the defendants did not pay her overtime for any time worked in excess of 40 hours per week, even though she frequently performed the functions of an hourly employee. (*Id.* ¶¶ 16, 18.)

Ivery asserts several related causes of action. She claims that the defendants' policy of classifying AMs as exempt from overtime violates the FLSA, the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.* ("IMWL"), and the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.* ("IWPCA"). She seeks to certify a collective action under the FLSA and a class action under both the IMWL and IWPCA to recover unpaid overtimes wages.

2

The initial complaint was filed on March 1, 2017.[1] On May 5, 2017, Ivery filed a notice of consent to be party in a FLSA collective action. (Notice of Consent, ECF No. 33.) Ten days later, she moved for conditional certification and for authorization to issue notice to prospective opt-in members. (Mot. for Court-Authorized Notice, ECF No. 35.) Ivery's proposed collective includes anyone who has "been employed as an [AM], including a Front of House Manager or Kitchen Manager, at an Applebee's restaurant operated by RMH between March 1, 2014 and the present." (Pl. Court-Authorized Notice, ECF No. 37-4.) While her motion for certification was pending, Ivery filed, with the approval of the Court, an amended complaint on July 6, 2017. (Order, ECF No. 64.) Two weeks later, the defendants filed a partial motion to dismiss her amended complaint. (Defs. Mot. to Dismiss, ECF No. 69.) The Court will address the defendants' motion to dismiss first and then turn to Ivery's certification motion.

## II.     Discussion

### A.     The Defendants' Motion to Dismiss

The defendants ask the Court to dismiss RMH Franchise as a defendant altogether and to dismiss Ivery's IWPCA claim. They seek dismissal of RMH Franchise on two fronts: under Rule 12(b)(1) for lack of standing (and thus lack of subject matter jurisdiction) and under Rule 12(b)(6) for failure to state a claim. The defendants also move to dismiss Ivery's IWPCA claim under Rule 12(b)(6) on the basis that she has failed to assert an essential element of that claim.

To survive the defendants' standing challenge, Ivery must show that she suffered (1) an injury in fact that is (2) fairly traceable to the challenged conduct of RMH Franchise and (3) that likely will be redressed by a favorable decision. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843

---

[1] The complaint was filed on behalf of Ivery and Noah Siebenaller, an AM who worked for the defendants in Wyoming between November 2014 and August 2015. Siebenaller, though, has since been dismissed from this suit. (Stipulation of Dismissal, May 16, 2014, ECF No. 39.)

F.3d 285, 289 (7th Cir. 2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)). Here, the defendants raise a facial challenge to standing, (Defs. Mem. in Supp. of Mot. to Dismiss 12, ECF No. 70); thus, the Court must evaluate whether Ivery's complaint adequately pleads the elements of standing by applying the "same analysis used to review whether a complaint adequately states a claim" under Rule 12(b)(6). *Silha v. ACT, Inc.*, 807 F.3d 169, 173-74 (7th Cir. 2015) (citations omitted). Ivery therefore "must plead sufficient factual allegations, taken as true, that 'plausibly suggest' each standing element is met. *Berger*, 843 F.3d at 289 (quoting *Silha*, 807 F.3d at 174).

To overcome a Rule 12(b)(6) motion, "a complaint must 'state a claim to relief that is plausible on its face.'" *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This Court "must accept as true all factual allegations in the . . . complaint and draw all permissible inferences" in Ivery's favor. *Id.* (quoting *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 639 (7th Cir. 2015) (internal quotation marks omitted)). However, "[w]hile a plaintiff need not plead 'detailed factual allegations' to survive a motion to dismiss, she still must provide more than mere 'labels and conclusions or a formulaic recitation of the elements of a cause of action' for her complaint to be considered adequate under [Rule] 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678).

4

1.      **Dismissal of RMH Franchise: Joint Employer Liability**

Although the defendants move to dismiss RMH Franchise for lack of standing and failure to state a claim, both challenges center on a single issue: whether Ivery adequately alleges that RMH Franchise was her employer under the FLSA. The basis for dismissal under Rule 12(b)(6) is that liability for unpaid overtime wages extends only to an "employer." 29 U.S.C. § 207(a). And because employees have standing to sue only their current or former employers under the FLSA, dismissal under Rule 12(b)(1) also hinges on Ivery's relationship with RMH Franchise. *Berger*, 843 F.3d at 289 ("Under the FLSA, alleged employees' injuries are only traceable to, and redressable by, those who employed them.") (internal quotation marks omitted).[2]

The language of the statute should be the starting place for a determination of Ivery's status vis-à-vis RMH Franchise, but the text of the FLSA provides no guidance in this regard, unhelpfully defining employment relationships in circular fashion. An "employee" means "any individual employed by an employer." *Id.* § 203(e). To "employ" means to "suffer or permit to work." *Id.* § 203(g). And "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In the absence of a meaningful statutory definition, and consistent with Supreme Court guidance to construe the terms "employer" and "employee" broadly, the Seventh Circuit has concluded that courts must examine the economic reality of the working relationship to assess whether an entity is an

---

[2] Although Ivery asserts claims against RMH Franchise under the IMWL and IWPCA as well, the Court need not analyze those statutes for two reasons. Several courts have found, and the parties do not dispute, that the "employer" analysis is the same under the FLSA and the IMWL. (Defs. Mem. 5 n.1, ECF No. 70; Pl. Mem. in Opp'n to Defs. Mot. to Dismiss 4-7, ECF No. 73); *see, e.g.*, *Schneider v. Cornerstone Pints, Inc.*, 148 F. Supp. 3d 690, 696 n.2 (N.D. Ill. 2015); *Nehmelman v. Penn Nat'l Gaming, Inc.*, 790 F. Supp. 2d 787, 795 n.3 (N.D. Ill. 2011); *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 784 (N.D. Ill. 2011). Moreover, as discussed below, Ivery appears to have abandoned her IWPCA claim. Thus, the Court will evaluate whether RMH Franchise is an employer only under the FLSA.

employer. *Hollins v. Regency Corp.*, 867 F.3d 830, 835 (7th Cir. 2017); *see also Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961). Whether an entity is an employer under the Act is a question of law. *Karr v. Strong Detective Agency Inc.*, 787 F.2d 1205, 1206-07 (7th Cir. 1986).

In examining the "economic realities" of working relationships, courts must look to "the totality of the circumstances" instead of applying "formalistic labels or common law concepts of agency." *Villareal*, 776 F. Supp. 2d at 785 (citing *Goldberg*, 366 U.S. at 33; *Donovan v. Sabine Irrigation Co., Inc.*, 695 F.2d 190, 194 (5th Cir. 1983)). Although there is no set framework for establishing an employer-employee relationship, many courts look at whether the defendant (1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedule or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. *See, e.g.*, *Zampos v. W & E Commc'ns, Inc.*, 970 F. Supp. 2d 794, 802 (N.D. Ill. 2013); *Babych v. Psychiatric Solutions, Inc.*, No. 09 C 8000, 2011 WL 5507374, at *6 (N.D. Ill. Nov. 9, 2011); *Nehmelman*, 790 F. Supp. 2d at 795.[3] The Seventh Circuit has found these factors to be relevant to the employer analysis; however, it has cautioned that they are not "the *only* relevant factors, or even the most important." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 643 (7th Cir. 2008) (applying FLSA standard for joint-employer to claim under the Family and Medical Leave Act).

It is well accepted that an employee may have more than one employer at a time. *See Falk v. Brennan*, 414 U.S. 190, 195 (1973). Indeed, federal regulations contemplate that entities that share common control over an employee may be deemed "joint employers" under the FLSA.

---

[3] These four factors originated with the district court in *Bonnette v. California Health and Welfare Agency*, 525 F. Supp. 128, 135 (N.D. Cal. 1981). They often are referred to as "the *Bonnette* factors."

29 C.F.R. § 791.2(a). Courts apply the same economic reality test "to determine whether more than one employer may be held liable under the FLSA." *Babych*, 2011 WL 5507374, at *7 (citing *Reyes v. Remington Hybrid Seed Co., Inc.*, 495 F.3d 403, 406-08 (7th Cir. 2007)). And while the joint employer analysis turns on the specific facts of each case, the Seventh Circuit has emphasized that "for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee." *Moldenhauer*, 536 F.3d at 644.

Ivery alleges that RMH Franchise, RMH Illinois, and RMH Holdings shared control over her work and thus all qualify as her joint employers. (Am. Compl. ¶¶ 1, 15; Pl. Opp'n 4, ECF No. 73.) The defendants do not contest that RMH Illinois and RMH Holdings were her employers under the FLSA; they challenge only Ivery's claim that RMH Franchise was also her employer. Their principal argument is that Ivery's allegation that she worked for RMH Franchise is "conclusory." (Defs. Mem. 2, ECF No. 70.) Instead of providing details of her employment relationship with RMH Franchise, Ivery asserts only "boilerplate" allegations of joint employment that fail to "differentiate" between the three defendants, which are separate corporate entities. (*Id.* at 2, 7-10.) As such, the defendants contend that Ivery pleads "no facts" in her complaint that plausibly "establish she was ever employed by RMH Franchise." (*Id.* at 7.) Ivery counters that her joint employment allegations are sufficient to give RMH Franchise fair notice of her joint employer theory and to plausibly support that theory. (Pl. Opp'n 3-4.)

The Court finds that the defendants have the better of the argument. For starters, Ivery fails to allege even the most basic facts concerning her employment as an AM; namely, who hired her, paid her, or directly supervised her work. By omitting such information, the amended complaint fails to identify which of the defendant entities was Ivery's primary, direct employer. That deficiency alone is enough to sink her claim. *See Cavallaro v. UMass Mem'l Healthcare,*

*Inc.*, 678 F.3d 1, 9-10 (1st Cir. 2012) (finding that "some direct employer needs to be identified before anyone in a group could be liable" on a joint-employer theory under the FLSA); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 201 (2d Cir. 2013) (noting in dicta that plaintiff's "actual and direct employer is an essential element of notice pleading" in FLSA action involving related defendants); *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 563-64 (E.D. Pa. 2011) (rejecting joint employment theory where complaint did not plead facts that identified which defendants primarily employed each plaintiff, such as "to which [defendants] they reported each day; from whom they received their paycheck; information about who, specifically, set their rate of pay and other conditions of employment; or who directly supervised their employment."); *see also Heuberger v. Smith*, No. 16 C 386-JD-JEM, 2017 WL 3923271, at *11-15 (N.D. Ind. Sept. 7, 2017) (discussing how "the four *Bonnette* factors, as used to determine whether multiple entities are a 'joint employer' for FLSA liability purposes, establish the proper analysis to determine whether a plaintiff has standing to sue entities apart from his immediate employer" in dismissing FLSA claim for lack of standing).

Ivery does not suggest that this sort of basic information is beyond her ken. Nor does she contend that identifying a primary employer would waive a claim against the other two defendants. The omission of this information from her complaint therefore suggests that her joint employer allegations should be viewed as an exercise in artful pleading rather than as a good faith effort to provide fair notice of a claim against RMH Franchise. A number of other courts have seen through this approach and made clear that there is no room for "game-playing omissions of plainly relevant detail" concerning a plaintiff's direct employer. *Cavallaro*, 678 F.3d at 10 & n.10 (collecting cases).

But even setting that issue aside, the amended complaint fails to plausibly show that RMH Franchise was her joint employer. As the defendants maintain, many of Ivery's allegations simply parrot factors relevant to the issue of joint employment, including conclusory statements like: "Defendants share control over the terms and conditions of AMs' employment," (Am. Compl. ¶ 27); "Each Defendant, directly or indirectly and jointly or severally, directed the terms of employment and compensation of Plaintiff," (*id.* ¶ 29); and "Each Defendant had the power to control the terms and conditions of employment of Plaintiff," (*id.* ¶ 31).[4] These sorts of conclusory allegations are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Twombly*, 550 U.S. at 555.

The remaining allegations do not make up the pleading deficit concerning RMH Franchise either.[5] The amended complaint, to be sure, includes some allegations that support an inference that there was cooperation and integration between RMH Holdings, RMH Franchise, and RMH Illinois. It alleges that all three defendants shared office space, a website, and human resources staff, (Am. Compl. ¶ 26); had control and oversight over compensation, timekeeping, payroll and other policies that applied to Ivery and all other AMs, (*id.* ¶¶ 23, 37, 44, 51); applied

---

[4] Other allegations in the amended complaint are similarly deficient, including: "Each Defendant employed or acted in the interest of an employer towards Plaintiff," (*id.* ¶ 28); "Upon information and belief, the Defendants operate in concert . . . so that they operate as joint employers," (*id.* ¶ 30); and "Defendants jointly employed Plaintiff," (*id.* ¶ 32). Ivery, though, does not rely on these allegations in her opposition to the defendants' motion to dismiss. (*See* Pl'n Opp'n 6-7, ECF No. 73).

[5] Despite Ivery's artful pleading, it appears to be undisputed that Ivery never worked in a restaurant owned by RMH Franchise. Ivery avers that she worked for the defendants only in Illinois, (Am. Compl. ¶ 15), and the defendants state in their opening brief that the Illinois location was owned and operated by RMH Illinois, (Defs. Mem. 2, ECF No. 70). In response, Ivery argues only that RMH Franchise was her "statutory" employer, (Pl. Opp'n 2, ECF No. 73), and does not dispute that the Chicago area restaurant that she references in the amended complaint was owned by RMH Illinois.

the same employment policies to AMs at all RMH restaurants, including policies relating to payment of overtime, (*id.* ¶¶ 38, 45, 52); and permitted AMs to transfer seamlessly between RMH locations, (*id.* ¶ 25). But these allegations, at most, show that RMH Franchise played some role in developing policies that applied to Ivery; they fall short of showing that RMH Franchise itself played any role in applying and enforcing such policies against her. *See Richardson v. Help at Home, LLC*, No. 17 C 00060, 2017 WL 2080448, at *3 (N.D. Ill. May 15, 2017) ("The test for joint employer liability is to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee ***in a manner that caused*** the FLSA violation (at least in part).") (citation omitted) (emphasis added).

Cooperation between affiliates does not imply control. That the defendants shared a payroll service, for example, does not suggest that RMH Franchise pays the employees of RMH Illinois, or vice versa. Similarly, that the two subsidiaries contributed to a common employment policy says nothing about whether RMH Franchise had any authority to compel RMH Illinois to adopt those policies or to enforce those policies against employees of RMH Illinois. *See Sampson v. MediSys Health Network, Inc.*, No. 10 C 1342, 2012 WL 3027838, at *4 (E.D.N.Y. July 24, 2012) (discussing how allegations that defendants had "centralized approach to management and human resources" and a "centralized payroll system" suggest "some kind of affiliation among the defendants" but do not indicate which defendant had "a direct role in controlling the plaintiffs' conditions of employment or in determining their rate and method of payment"). These two companies were each subsidiaries of RMH Holdings, and though it may be reasonable to infer that RMH Holdings, as the parent corporation of RMH Franchise and RMH Illinois, had the authority to direct those subsidiaries to comply with such policies, there is

no similar basis to infer that one subsidiary had authority to enforce those policies on the other subsidiary. *See Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 149 (D. Mass. 2013) (finding allegations that parent centrally controlled human resources and that subsidiaries implemented system-wide policies plausibly showed that employee's compensation was controlled by parent, but not by sister subsidiaries).

Moreover, the amended complaint includes no allegations that RMH Franchise (as distinguished from RMH Holdings, the parent corporation) had any authority to direct RMH Illinois to enter into such arrangements or to control the activities of RMH Illinois employees. It does not allege that RMH Franchise hired Ivery or had the authority to fire her. There are no allegations that RMH Franchise set Ivery's work schedule, directly supervised her day-to-day work as an AM, or issued her payroll checks. These are the types of allegations that allow courts to draw reasonable inferences that an entity "controls" working conditions. *See, e.g.*, *Heuberger*, 2017 WL 3923271, at *2, *12 (determining which of three affiliated entities exercised control over plaintiff based on plaintiff's paychecks and other documents he received from his employer in dismissing FLSA claims against other two); *Slamna v. API Rest. Corp.*, No. 12 C 757 (RWS), 2012 WL 2979067, at *4-5 (S.D.N.Y. July 20, 2012) (finding that only two of four affiliated restaurants could be considered employers on motion to dismiss after reviewing ownership structure of restaurants and which restaurants paid the plaintiffs); *see also Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 961 (8th Cir. 2015) (discussing how facts such as "the name on [the plaintiffs'] business cards, the identify of their supervisors, the source of their work schedules, and the information they were given when they were hired" are the type of allegations

that could allow a court to reasonably infer that a defendant was a joint employer). Yet, Ivery's complaint includes no such allegations.[6]

Ivery cites to several cases to support her argument that she sufficiently alleges a joint employment relationship with RMH Franchise, but none that would excuse her failure to identify an actual employer. For example, in *Vega v. Contract Cleaning Maintenance, Inc.*, the plaintiffs pled several facts that show for whom they primarily worked, including which defendant set their schedules, provided them with the equipment to perform their duties, and paid them on an hourly basis. No. 03 C 9130, 2004 WL 2358274, at *2 (N.D. Ill. Oct. 18, 2004). Similarly, in *Guon v. John Q. Cook, M.D. LLC*, which dealt with whether a medical provider and a human resource contractor were joint employers, the plaintiff alleged that she worked for the provider while the contractor had control over her hiring and pay. No. 16 C 3840, 2016 WL 6524948, at *2 (N.D. Ill. Nov. 3, 2016). *Nehmelman*, which involved whether a casino employee sufficiently alleged that a gaming company and its wholly-owned subsidiary, Empress Casino Joliet, were both employers, is distinguishable on the same basis. 790 F. Supp. 2d at 795-96. Unlike Ivery, the plaintiff in that case plead enough to infer that she "took direction" from Empress' employees. *Id.* at 796. Thus, the court had some basis to determine a primary employer.[7]

---

[6] While it is true that Ivery alleges that "RMH classifie[d] all AMs as exempt" and that pursuant to this policy "RMH did not pay [her] overtime premium pay," (Am. Compl. ¶¶ 5, 18), those allegations, again, do not indicate which of the defendants classified her as exempt or issued her paycheck.

[7] The court does not find *Tahir v. Avis Budget Group, Inc.*, No. 09-3495 (SRC), 2009 WL 4911941 (D.N.J. Dec. 14, 2009) persuasive either. The district court in that case rejected the defendants' argument that the plaintiff failed to adequately plead that a holding company was an employer under the FLSA largely because the defendants relied on facts outside of the complaint. *Id.* at *9. The defendants here argue that the complaint is deficient on its face.

12

Consequently, the amended complaint does not plausibly establish an employment relationship with RMH Franchise.[8] The Court therefore grants the defendants' motion to dismiss RMH Franchise pursuant to Rule 12(b)(1) and 12(b)(6). The dismissal, however, is without prejudice. Ivery is afforded another opportunity to amend her pleading to address the deficiencies outlined in this opinion. Moreover, as will be seen, this dismissal has no effect on the scope of notice to the potential members of the collective because even if RMH Franchise is not a defendant, its employees may nevertheless assert an unpaid overtime claim by virtue of RMH Holdings' potential status as a joint employer of its subsidiaries' AMs.

### 2.     Dismissal of IWPCA Claim

The defendants also move to dismiss Ivery's IWPCA claim on the basis that she fails to plead entitlement to compensation under an employment agreement, a necessary element of that claim. (Defs. Mem. 13-14, ECF No. 70.) Ivery responds that she does not assert a claim under that statute. (Pl. Opp'n 9 n.7, ECF No. 73.) Although the amended complaint does in fact allege an IWPCA claim, (*see, e.g.*, Am. Compl. ¶ 13 ("Plaintiff also brings this action to recover unpaid overtime compensation for herself and similarly situated current and former Illinois AMs as a [Rule 23] class action under . . . the Illinois Wage Payment and Collection Act . . . ."), Ivery now appears to abandon that claim. As a result, the Court grants the defendants' motion to dismiss Ivery's IWPCA claim pursuant to Rule 12(b)(6) and dismisses the claim with prejudice.

### B.     Ivery's Motion for Collective Certification and Step-One Notice

The Court now turns to Ivery's motion for conditional certification and step-one notice. Section 16(b) of the FLSA, 29 U.S.C. § 216(b), authorizes employees to act together to seek redress for violations of the maximum hour provisions of 29 U.S.C. § 207. *Ervin v. OS Rest.*

---

[8] The same might be said as to the other defendants, but the motion to dismiss seeks dismissal of RMH Franchise only.

*Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011); *see Schaefer v. Walker Bros. Enters, Inc.*, 829 F.3d 551, 553 (7th Cir. 2016) ("Suits under the Fair Labor Standards Act cannot proceed as class actions. Instead they are opt-in representative actions."); *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). "The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin*, 632 F.3d at 974. Here, Ivery seek to provide such notice to all AMs who worked for the defendants between March 1, 2014 and the present. (Pl. Notice, ECF No. 37-4); 29 U.S.C. § 216(b) (opt-in requirement).

"Neither Congress nor the Seventh Circuit has specified the procedure courts should use to decide FLSA certification and notice issues, but collective FLSA actions in this district generally proceed under a two-step process." *Grosscup v. KPW Mgmt., Inc.*, No. 16 C 6501, 2017 WL 2461538, at *1 (N.D. Ill. June 7, 2017); *Salmans v. Byron Udell & Assocs., Inc.*, No. 12 C 3452, 2013 WL 707992, at *2 (N.D. Ill. Feb. 26, 2013). First, the plaintiffs have the burden of showing that there are other similarly situated employees who are potential claimants. *Grosscup*, 2017 WL 2461538, at *1. The plaintiffs must make a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law. *Id.*; *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855 (N.D. Ill. 2013) ("At this stage of the proceedings, plaintiffs must make a modest factual showing of common, unlawful conduct and provide some indication of harm to employees."). Courts use a "lenient interpretation" of the term "similarly situated" in deciding whether plaintiffs meet this burden. *Salmans*, 2013 WL 707992, at *2 (quoting *Jirak v. Abbott Labs., Inc.*, 566 F.Supp.2d 845, 848 (N.D. Ill. 2008)). "There is a low standard of proof."

*Bergman*, 949 F. Supp. 2d at 855. If the plaintiffs are able to show that other potential plaintiffs are similarly situated, courts may conditionally certify the suit as a collective action and allow the plaintiffs to send notice of the case to similarly situated employees who may then opt in as plaintiffs. *Grosscup*, 2017 WL 2461538, at *1; *Salmans*, 2013 WL 707992, at *2.

The second step, occurring after the opt-in and discovery process has been completed, is more stringent. Once it is known which employees will be part of the collective, the Court must reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis. *Grosscup*, 2017 WL 2461538, at *2; *Nehmelman*, 822 F. Supp. 2d at 751. "If the court finds insufficient similarities during the second step, it may revoke conditional certification or divide the class into subclasses." *Grosscup*, 2017 WL 2461538, at *2 (quoting *Sylvester v. Wintrust Fin. Corp.*, No. 12 C 1899, 2013 WL 5433593, at *3 (N.D. Ill. Sept. 30, 2013)).

### 1.    Similarly Situated Requirement

This case is currently at step one of the collective certification process. To show that she and other AMs are victims of a common policy or plan that violates the FLSA, Ivery submits two declarations—one her own and another from Noah Siebenaller, a former plaintiff—attesting to how they performed similar duties and were uniformly classified as exempt from overtime.[9] Ivery testifies that she worked as a front of house manager at the defendants' restaurant in Country Club Hills, Illinois between mid-2013 and June 2014. (Ivery Decl. ¶ 3, ECF No. 37-2.)[10]

---

[9] Ivery also submits job postings from the website snagajob.com, which advertise open AM positions at the defendants' restaurants in 15 states across the country. Because the Court finds that Ivery has made a modest factual based on the declarations she has submitted and other evidence presented by the defendants, the Court need not rely on those postings in this analysis.

[10] Ivery specifically testifies that she worked at three of the defendants' restaurants in Illinois between 2013 and June 2014. However, the Court will consider only her time at the Country Club Hills location for several reasons. First, the defendants assert that two other

During that time, she worked an average of 50-60 hours per week, but was never paid for overtime. (*Id.* ¶ 5.) As an AM, Ivery states that she spent about 80% of her time performing manual and customer services tasks, such as greeting and seating customers, preparing meals, cleaning the restaurants, unloading delivery trucks, and performing general customer service duties, among others. (*Id.* ¶ 6.) Her status as an AM did not exempt Ivery from following any RMH policies, and she did not have the authority to select menu items, never provided input regarding promotion or sales strategies, could not set hours of operation or close the restaurant early, had no authority over budgets, could not establish a dress code for employees, or unilaterally hire, fire, or make schedules. (*Id.* ¶¶ 8-15, 17.) And although she admits to performing some "managerial" duties, such as participating in interviews and creating first drafts of schedules, Ivery states that those responsibilities took up only a small portion of her work time. (*Id.* ¶ 16.) Ivery further testifies that she observed several other AMs at the Country Club Hills restaurant and states that those AMs performed the same mix of duties as her. (*Id.* ¶ 18.) She also states that those AMs were not paid overtime. (*Id.* ¶ 5.)

Siebenaller testifies that he worked as a kitchen manger in two of the defendants' restaurants in Wyoming between November 2014 and August 2015. (Siebenaller Decl. ¶¶ 1-3 ECF No. 37-3.) Siebenaller describes his job duties in an almost identical manner to Ivery. (*Compare* Ivery Decl. ¶¶ 4-17 *with* Siebenaller Decl. ¶¶ 4-17.) Moreover, Siebenaller did not

---

restaurants were owned by a separate, non-RMH franchisor when Ivery worked there. (Defs. Am. Resp. 6, ECF No. 52; Muldoon Decl. ¶ 9, ECF No. 52-1.) Although the Court does not weigh evidence at the conditional certification stage, Ivery admits in her deposition—portions of which the defendants filed as an exhibit in a motion to supplement the record for conditional certification (ECF No. 86)—that she worked for another franchisor prior to working for the defendants. (Ivery Dep., Ex. 1, at 173:1-3, 227:2-6, ECF No. 87-1.) And Ivery does contest in her reply brief that the defendants acquired the other franchisor in mid-June 2013, when she began working at the Country Club Hills location. Ivery also has not presented any evidence that she worked at either of the other two restaurants during the proposed collective period.

complete any additional training when he moved between restaurants and regularly worked between 50 and 60 hours per week but was not paid overtime. (*Id.* ¶¶ 5, 22.) Siebenaller also observed several other AMs at the two Wyoming locations where he worked, both kitchen and front of house managers. (*Id.* ¶ 18.) He states that those AMs performed similar duties as him and were not paid overtime. (*Id.* ¶¶ 5, 19.)

The defendants challenge conditional certification on four grounds. Their first argument is that Ivery cannot represent the putative collective because her own claim is time-barred. (Defs. Am. Resp. to Pl. Mot. for Notice 10-15, ECF No. 52.) The default limitations period under the FLSA is two years. 29 U.S.C. § 255(a). A "willful" violation of the Act, though, is subject to a three-year, rather than a two-year, statute of limitations. *Id.* The plaintiff bears the burden of proof on the issue of willfulness. *Kelly v. Bank of Am.*, No. 10 C 5332, 2011 WL 4526674, at *1 (N.D. Ill. Aug. 30, 2011) (citing *Bankston v. State of Ill.*, 60 F.3d 1249, 1253 (7th Cir. 1995)). There is no question that Ivery's claim depends on the availability of the three-year statute of limitations and so to prevail on her own claim she will have to establish that the defendants acted willfully. The parties disagree, however, on whether Ivery needs to establish willfulness at this point. The defendants contend that she must meet her burden now and offer evidence that their classification of AMs was made in good faith—as it was done at the advice of counsel and confirmed by several Department of Labor reviews. (Defs. Am. Resp. 13-15, ECF No. 52.) Ivery argues that her allegations of willfulness alone are enough to carry her through step one. (Pl. Reply 4-7, ECF No. 56; *see* Am. Compl. ¶ 62.) The Court agrees with Ivery.

As noted, this is but the first step in the collective certification process; one intended not to definitively resolve the question of whether this case is appropriate for collective treatment but rather to assess whether it is appropriate to provide court-approved notice to others who appear

to be similarly situated of the opportunity to join the case. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) ("The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . ."). And in the context of a collective action—where, unlike a class action—the claims of prospective members of the collective are not tolled by the filing of the action and continue to run until an opt-in notice is filed, it is both unnecessary and unfair to require plaintiffs to prove the "willfulness" of the defendants' alleged actions before permitting notice. Willfulness is an issue that is particularly within the province of the defendants, and FLSA plaintiffs are unlikely to be able to prove a claim of willfulness without access to some discovery. *Cf.* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). And discovery takes time—time during which claims of many putative members of the collective may be extinguished by the limitations period. That is why this Court and several others have held that conclusory allegations of willfulness suffice to justify providing notice to the putative collective on the basis of the potentially applicable three-year period. *See, e.g.*, *Sylvester*, 2013 WL 5433593, at *5 (collecting cases); *Lukas v. Advocate Health Care Network & Subsidiaries*, No. 14 C 2740, 2014 WL 4783028, at *3 (N.D. Ill. Sept. 24, 2014).

In any event, willfulness goes directly to the merits of the case and is thus premature to resolve at this juncture. *See Brooks v. Safety-Kleen Sys. Inc.*, No. 11 C 7245, 2012 WL 3598763, at * 6 (N.D. Ill. Aug. 14, 2011) (rejecting argument that FLSA collective action should not be conditionally certified because plaintiff relied on three-year statutory period and there was "strong likelihood" that she could not establish willfulness); *see also Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 C 10447, 2016 WL 401701, at *2 (N.D. Ill. Jan. 20, 2016) ("[A]t this initial stage, the court does not resolve factual disputes or decide substantive issue going to the

merits.") (internal quotation marks and citation omitted). Indeed, the Court must first determine whether the defendants have even violated the FLSA before it can find that the violation was willful. *See, e.g.*, *Tamas v. Family Video Movie Club, Inc.*, No. 11 C 1024, 2013 WL 1286693, at *9 (N.D. Ill. Mar. 28, 2013) (finding willfulness inquiry to be "premature" on summary judgment where there had "been no finding that defendants violated the FLSA").

And although the defendants strongly believe that they implemented their overtime policy in good faith, (Defs. Am. Resp. 13, ECF No. 52 ("The evidence amply supports Defendants' good faith")), their position is "not a certainty," *Brooks*, 2012 WL 3598763, at *6, and Ivery should have the benefit of discovery to test the defendants' evidence. Moreover, to the extent that the defendants contend that notice should not be permitted because Ivery "may not have a legitimate claim," (Defs. Am. Resp. 13, ECF No. 52), that is true but unavailing. A FLSA plaintiff need not prove her claim in order to satisfy the relatively low burden of identifying other "similarly situated" persons to whom notice should be provided. Nonetheless, this ruling should not be interpreted as a finding that the defendants acted willfully or that the three-year statute of limitations applies; those determinations will be made after notice and discovery.

The defendants' second challenge is that even if Ivery's claim was timely filed, certification is inappropriate because she is not an adequate representative of the collective. The defendants offer two reasons why Ivery is inadequate. First, she has only a minimal stake in the litigation because she was employed, at most, for 19 days during the three-year statutory period. (Defs. Am. Resp. 18-19, ECF No. 52.) Second, Ivery is not familiar with the duties performed by a vast majority of the putative collective because she worked for only RMH Illinois, and that entity employed only around 9% of potential opt-in plaintiffs. (*Id.* at 2, 15-16.)

Even assuming both contentions are true,[11] the defendants' argument is unpersuasive. That other members of a collective may have larger damage claims does not make Ivery an inadequate representative; her right to recovery will require the same showing of liability that any other member of the collective has to make. Indeed, in view of the fact that her right to recovery appears to require a showing of willfulness, Ivery arguably has **_greater_** incentive to build a strong case against the defendants than do plaintiffs whose claims do not require such a showing. Further, given the availability of attorney's fees to prevailing plaintiffs in FLSA cases—*see* 29 U.S.C. § 216(b) ("The court in [a FLSA collective] action shall . . . allow a reasonable attorney's fee to be paid by the defendant . . . .")—Ivery (more accurately, her attorneys) will not be faced with any substantial dilemma about whether to invest the time or

---

[11] Ivery takes the position that the statute of limitation on her claim stopped running on March 1, 2017, the date her complaint was filed, and so her claim covers a period of about three months. Although it is true as a general matter that "[t]he statute of limitations in a suit based on federal law . . . stops running when the complaint is filed," *Robinson v. Doe*, 272 F.3d 921, 922 (7th Cir. 2001), that does not appear to be the rule in a FLSA case where the plaintiff asserts claims "individually and on behalf of others similarly situated." Section 216 of the FLSA permits "[a]n action to recover" wages owed under the FLSA to "be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated," but provides that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Section 256 of the FLSA further clarifies that "in the case of a collective or class action instituted under the [FLSA]," such an action "shall be considered to be commenced in the case of any individual claimant—(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or (b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced." 29 U.S.C. § 256. Although Ivery's original complaint refers to a consent form included as Exhibit A, no such attachment was filed with the original complaint. (*See* Compl. ¶ 20, ECF No. 1.) Ivery did not file the required consent until May 5, 2017. (Notice of Consent, ECF No. 33). Moreover, while Ivery alleges that she worked as an AM until "June 2014," (Am. Compl. ¶ 15), the defendants maintain that her last day of employment was May 24, 2014, (Muldoon Decl. ¶ 10, ECF No. 52-1). Whether Ivery has a claim for 19 days, or 26, or for three months, though, is not material to the Court's ruling, so it does not resolve that issue here.

resources necessary to pursue Ivery's claim simply because it is more modest than much of the rest of the collective.

Moreover, in advancing this argument, the defendants seek to interject the adequacy prong under Rule 23 into the FLSA's certification analysis. But "Rule 23 actions are fundamentally different from collective actions under the FLSA," *Symczyk*, 569 U.S. at 74 (citation omitted), and the FLSA has no such adequacy requirement, *see, e.g.*, *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 573 n.14 (D. Md. 2012) ("Most courts articulating the requirements for conditional certification of a collective action . . . have concluded that the FLSA does not incorporate Rule 23's adequacy criterion for conditional certification.") (internal quotation marks and alterations omitted) (collecting cases). Rather, the FLSA requires only that the collective representative be "similarly situated" to others in terms of the work performed. The adequacy of a collective representative is, at most, "an equitable consideration at issue in determining whether to certify a putative class" under the FSLA. *In re FedEx Ground Package Sys., Inc.*, 662 F. Supp. 2d 1069, 1081-82 (N.D. Ind. 2009).[12]

The defendants' third challenge to conditional certification is based on the contention that AMs are properly classified as "executive" employees and thus are not victims of a policy that violates the FLSA. *See* 29 U.S.C. § 213(a)(1) (FLSA exemptions). The defendants argue that while Ivery presents some evidence to contest the applicability of the "administrative" exemption, she does not "seriously dispute" that AMs fall under the executive exemption. (Defs. Am. Resp. 3, 20-22, ECF No. 52.) This argument is premature as well. Several courts, including this one, have held that the applicability of FLSA exemptions typically is not addressed during

---

[12] The defendants' reliance on *Sodekson v. East Coast Restaurant & Nightclubs LLC*, No. 15 C 2711-RBH, 2016 WL 4613386 (D.S.C. Sept. 6, 2016) is unpersuasive, as that case addresses none of the points discussed above.

step one of the certification analysis. *See, e.g.*, *Salmans*, 2013 WL 707992, at *5 ("All that is necessary at this stage is for the plaintiffs to establish that the class was subject to a common policy that *allegedly* violates the overtime provision of the FLSA . . . .") (citations omitted); *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d. 988, 992 (N.D. Ill. 2010) (collecting cases). Whether the executive exemption has been properly applied is a question for a later time.

Finally, the defendants ask the Court to at least hold off ruling on certification until the parties have conducted discovery on "threshold issues critical to the viability of this litigation," including "willfulness, employment relationships, and whether [Ivery] is 'similarly situated' to the putative class members." (Defs. Am. Resp. at 24-25, ECF No. 52.) The defendants believe that discovery on these issues would take no more than 90 days and have offered to toll the limitations period for potential opt-in plaintiffs in the meantime. (*Id.* at 4 n.4, 25.) They argue that it would be a waste of the Court and the parties' time and resources to notify the putative collective only to determine at a later stage that certification was inappropriate based on the same arguments. (*Id.* at 24.) They also contend that the increased costs that come with conditional certification would place undue pressure on them to settle the case, even though they have a viable argument that their classification decision was proper. (*Id.*)

Ivery objects to the defendants' proposal. She characterizes the above issues as "merits" based—not threshold questions—and argues that discovery on willfulness alone will take much longer than the defendants suggest. (Pl. Reply 14-16, ECF No. 56.) Moreover, she states that delaying notice would be "inequitable" because it increases the chance that the defendants' contact information for the collective will be outdated and that opt-in members will have inadvertently disposed of relevant evidence. (*Id.*)

The Court concludes that, in this case, notice should precede discovery. As a general matter, conditional certification is meant only "to determine the size and contour of the group of employees who may become collective members and whether those potential members are 'similarly situated.'" *Briggs*, 2016 WL 401701, at *2 (citing 7B Charles A. Wright et al., *Federal Practice & Procedure* § 1807.) It is not meant to "resolve factual disputes or decide substantive issues going to the merits." *Id.* (citations omitted). But that is exactly what the defendants are asking the Court to do, especially with regard to the issues of willfulness and classification (the latter of which being framed as a "similarly situated" question). Moreover, this is not a case where conditional certification discovery promises to be discrete and narrowly tailored; rather, and as discussed, there is substantial overlap between issues germane to certification and the merits and the Court is skeptical that discovery on these issues will wrap up in 90 days.[13] Moreover, the defendants' request to conduct pre-certification discovery on Ivery's employment relationships is, at this juncture, moot, as the Court has granted their motion to dismiss RMH Franchise. And although the defendants offer to toll the statute of limitations during pre-certification discovery and raise concerns about the cost of collective litigation, those issues are not reason enough in this case to delay notice in this case, particularly when amendments and motion practice have already delayed the issuance of notice somewhat. Thus, the Court finds that Ivery has made the modest factual showing necessary to conditionally certify a collective.

### 2.    Scope of Certification

Having found that conditional certification is appropriate, the Court also concludes that notice should issue to any AMs who have worked for an Applebee's restaurant operated by

---

[13] The defendants state that they have already completed discovery on the issues of willfulness and classification. Ivery, however, is the party that needs the most discovery and her discovery efforts continue. (*See* Defs. Suppl. Auth. to Am. Resp. 2 n.3, ECF No. 87-1.)

RMH Holdings or its two subsidiaries, RMH Illinois and RMH Franchise, between March 1, 2014 and the present. There is enough evidence to conclude, for purposes of conditional certification, that AMs across all of the defendants' Applebee's restaurants are similarly situated. *See Nicks v. Koch Meat Co., Inc.*, No. 16 C 6446, 2017 WL 4122743, at *11-12 (N.D. Ill. Sept. 18, 2017) (conditionally certifying FLSA collective as to all of defendants' divisions across multiple states where there was evidence of company-wide practice of not paying overtime even though plaintiffs from only one division had opted in). The defendants admit that all AMs are classified as FLSA exempt and that they did not pay AMs overtime. (*Id.* ¶¶ 16, 25.) There also is evidence that AMs at all restaurants regularly worked more than 40 hours per week. (RMH Management Handbook 4, ECF No. 52-11 ("Typically, attaining proper management coverage requires managers to work an average of 55 hours per week."); AM Job Description 1, ECF No. 52-5 ("Number of Hours Per Week: 55 plus hour work week typically 11 hour shifts . . . ."); *see also* Ivery Decl. ¶ 5, ECF No. 37-2 ("As an AM, I regularly worked . . . approximately 50 to 60 hours of work each week"; Siebenaller Decl. ¶ 5, ECF No. 37-3 (same).) Moreover, Ivery and Siebenaller's testimony indicates that AMs in at least two different states performed similar duties and operated under similar conditions as Ivery. (*See generally* Ivery Decl., ECF No. 35-2, Siebenaller Decl., ECF No. 35-3.)

The defendants counter that the collective should be limited to AMs at the Country Club Hills location, as Ivery is the only named plaintiff and that is the only restaurant where she worked for the defendants. (Defs. Am. Resp. 16-17, ECF No. 52.) But the defendants' argument ignores Siebenaller's testimony that AMs in Wyoming also performed duties similar to Ivery. Just because Siebenaller has been dismissed from this action does not mean that his observations are irrelevant. The argument also ignores the other elements of commonalty outlined above,

much of which is established by the defendants' own evidence. In any event, the defendants also present evidence that AMs perform similar duties on a company-wide basis. (*See* AM Job Description, ECF No. 52-5; *see also* Skalka Decl. ¶ 5, ECF No. 52-7.) Although Ivery and the defendants paint a different picture of the duties actually performed by AMs, (*compare* Ivery Decl., ECF No. 35-2 *with* Skalka Decl., ECF No. 52-7), the Court need not determine now which picture is accurate, *see Briggs*, 2016 WL 401701, at *2.

Alternatively, the defendants suggest that the collective should include only AMs who worked directly for RMH Illinois because there is no evidence that Ivery worked for RMH Franchise or that RMH Holdings employed AMs at all. (Defs. Am. Resp. 15-16, ECF No. 52; Muldoon Decl. ¶¶ 4, 27, ECF No. 52-1.) Neither argument is persuasive. As an initial matter, the dismissal of RMH Franchise due to Ivery's failure to adequately plead an employment relationship with that entity does not mean that notice should be withheld from AMs who worked directly for RMH Franchise. Regardless of whether RMH Franchise is a defendant, Ivery has made a modest factual showing that she is similarly situated to AMs who worked for that entity based on some evidence that RMH Holdings implemented a company-wide policy (that is, as to both RMH Illinois and RMH Franchise) classifying AMs as exempt and that AMs across all of the defendants' restaurants perform similar duties. Furthermore, AMs who worked directly for RMH Franchise still have a viable claim in this litigation to the extent they can show that RMH Holdings was their joint employer. Importantly, the defendants have not challenged the adequacy of the pleadings regarding RMH Holdings' status as a joint employer of RMH Illinois AMs, and those allegations apply equally to the relationship between RMH Holdings and RMH Franchise. In other words, if RMH Holdings is a joint employer of RMH Illinois AMs—a conclusion that

the defendants do not concede but did not challenge in their motion to dismiss—then there is no basis to conclude that RMH Holdings is not a joint employer of RMH Franchise AMs as well.

Nor does it matter, as the defendants seem to suggest, whether RMH Holdings directly employs AMs. Given its status as a holding company, it does seem unlikely that RMH Holdings was the primary employer for any restaurant level employees, let alone AMs. Nonetheless, as a potential joint employer with RMH Franchise and RMH Illinois, it must be considered an employer of both of those entities' AMs at this stage. Therefore, the Court is satisfied that there is a sufficient basis to conditionally certify as a collective all AMs who worked at an Applebee's restaurant operated by RMH Holdings, or its subsidiaries RMH Illinois and RMH Franchise, between March 1, 2014 and the present.

### 3. Facilitating Notice

The Court's final act is to address three procedural issues regarding how notice should be issued. The first concerns the form of Ivery's proposed notice. (*See* Pl. Notice, ECF No. 37-4.) "Absent reasonable objections by either the defendant or the Court, plaintiffs should be allowed to use the language of their choice in drafting the notice." *Kelly*, 2011 WL 7718421, at *1 (quoting *King v. ITT Cont'l Baking Co.,* No. 84 C 3410, 1986 WL 2628, at *3 (N.D. Ill. Feb. 18, 1986) (Rovner, J.)). "The Court has both the power and the duty to ensure that the notice is fair and accurate, [but] that power should not be used to alter plaintiffs' proposed notice unless such alteration is necessary." *Heitmann v. City of Chicago*, 04 C 3304, 2004 WL 1718420, at *3 (N.D. Ill. July 30, 2004) (quoting *King*, 1986 WL 2628, at *3). Nonetheless, "the Court must be careful to avoid the appearance of 'judicial sponsorship' or a 'judicial imprimatur.'" *Heuberger*, 2017 WL 3923271, at *7 (quoting *Hoffmann-La Roche*, 493 U.S. 165, 174 (1989)). The defendants offer no objection to Ivery's proposed notice and the Court sees the need to make only one

modification. Ivery is ordered to remove the case caption from the notice and replace it with her attorneys' letterhead. *See id.* (ordering same); *Alexander v. Caraustar Indus.*, No. 11 C 1007, 2011 WL 2550830, at *3 (N.D. Ill. June 27, 2011) (same). Ivery may still include the case number and the title in her notice, however.

Second, Ivery asks the Court for an order instructing the defendants to produce certain employee information to facilitate notice, including employees' names; work locations; last known mailing addresses, phone numbers, personal email addresses, and work email addresses; and for any members whose notices are returned undeliverable, the last four digits of their social security numbers. (Pl. Mem. in Supp. of Mot. for Notice 13-14, ECF No. 38.) The Court holds that defendants RMH Holdings and RMH Illinois must produce all of the above information (to the extent that it is reasonably available to them), except for the social security numbers, for AMs who have worked for either of those defendants or for RMH Franchise. Although Ivery points to several cases in which courts have ordered the production of social security numbers for potential opt-in members, *see, e.g.*, *Anyere v. Wells Fargo, Co., Inc.*, No. 09 C 2769, 2010 WL 1542180, at *5 (N.D. Ill. Apr. 12, 2010), neither those courts nor Ivery explain why such information is necessary or appropriate. While it might facilitate the plaintiff's ability to provide notice to some former AMs, the Court will not assume that in providing social security numbers to an employer, employees have implicitly agreed that such information may be disclosed to third parties seeking to contact them about participating in litigation. Thus, the Court declines to order the production of social security numbers. *See Brand v. Comcast Corp.*, No. 12 C 1122, 2012 WL 4482124, at *9 (N.D. Ill. Sept. 26, 2012) (denying request for social security numbers on same basis); *Blakes v. Ill. Bell Tel. Co.*, No. 11 C 336, 2011 WL 2446598, at *8 (N.D. Ill.

June 15, 2015) (same). The defendants must produce all of the other information outlined above, in accordance with the above definition of the collective, within 14 days of this ruling.

Finally, Ivery seeks to issue a reminder mailing and email to all potential collective members half-way through the notice period. (Pl. Mem. 14, ECF No. 38.) The Court sees no issue with this request and the defendants offer no objection. As with her proposed notice, however, Ivery must ensure her reminder notice does not include a case caption. (*See* Pl. Reminder Notice, ECF No. 37-5.)

\*　　　\*　　　\*

For the above reasons, the defendants' motion to dismiss is granted. RMH Franchise is dismissed without prejudice, while Ivery's IWPCA claim is dismissed with prejudice. Ivery has until January 8, 2018 to file an amended complaint that addresses the deficiencies outlined in this opinion regarding RMH Franchise. Moreover, Ivery's motion for conditional certification is granted in part and denied in part. The Court conditionally certifies a collective of AMs who worked at Applebee's restaurants operated by RMH Holdings, or its subsidiaries RMH Illinois and RMH Franchise, between March 1, 2014 and the present. The Court also approves Ivery's proposed notice and reminder with the modifications set forth above. Finally, the Court orders that RMH Holdings and RMH Illinois produce to Ivery, in digital form, the employee contact information outlined above, excluding social security numbers, no later than December 22, 2017.

Date: December 8, 2017

John J. Tharp, Jr.
United States District Judge